Kennedy F. JONES d/b/a Shiloh Ridge Apartments, Appellant,

The Missouri Press Association,
Amicus Curiae,

v.

JACKSON COUNTY CIRCUIT COURT
and Teresa York, Court Administrator,
Respondents.

No. WD 61414.

Missouri Court of Appeals,
Western District.

Feb. 8, 2005.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 29, 2005.

Application for Transfer Denied
May 31, 2005.

Don A. Peterson, Kansas City, MO, for appellant.

Jean Ann Maneke, Kansas City, MO, James R. Layton, Jefferson City, MO, for Amicus Curiae.

Bart A. Matanic, Jefferson City, MO, for respondent Jackson County Circuit Court.

Harlene J. Hipsch, Kansas City, MO, for respondent York.

Before HARDWICK, P.J., BRECKENRIDGE and EDWIN H. SMITH, JJ.

PATRICIA BRECKENRIDGE, Judge.

Kennedy F. Jones, d/b/a Shiloh Ridge Apartments, appeals the dismissal of his amended petition for mandamus and/or mandatory injunction against the Jackson County Circuit Court and Teresa York, the Jackson County Court Administrator [1] (re-

---

1. The amended petition named Jaci Mairs, who was the Jackson County Court Administrator at the time. Ms. Mairs is no longer the Jackson County Court Administrator. Rule 52.13(d) provides that "[w]hen a public offi-

cer is a party to an action in an official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the successor is automatically substituted as a party." The

ferred to collectively as "the Circuit Court"). Mr. Jones raises six points on appeal. In his first point, Mr. Jones claims that the trial court erred in finding that he failed to state a claim for relief based upon his assertion that the Circuit Court violated the Sunshine Law, sections 610.010 *et seq.*, RSMo 2000.[2] In his second and third points, Mr. Jones contends that the trial court erred in finding that he failed to state a claim for relief based upon his assertion that the Circuit Court violated Supreme Court Operating Rules 2.02 and 2.04. In his fourth point, Mr. Jones claims that the trial court erred in refusing to permit him to depose a programmer from the Office of State Courts Administrator (OSCA). In his fifth point, Mr. Jones argues that the trial court erred in striking his motion for summary judgment. In his sixth point, Mr. Jones alleges that the trial court erred in striking an affidavit attached to his summary judgment motion. This court finds that the trial court did not err in finding that Mr. Jones failed to state a claim upon which relief could be granted in his assertions that the Circuit Court violated the Sunshine Law and Court Operating Rules 2.02 and 2.04. Accordingly, the judgment of the trial court is affirmed, and Mr. Jones' other points on appeal are deemed moot.

### Factual and Procedural Background

Since this is an appeal from a motion to dismiss for failure to state a claim upon which relief can be granted, this court takes as true the facts from Mr. Jones' petition. *Johnson ex rel. Wilken v. Jones,* 67 S.W.3d 702, 704 n. 2 (Mo.App.2002). According to his amended petition, on July 6, 2000, Mr. Jones submitted a request to the court administrator seeking access to public records and electronic copies of the records on CD–ROM. Mr. Jones sought information concerning landlord petitions and complaints for rent and possession, unlawful detainer, and damages for breach of lease or rental agreements. Mr. Jones wanted records containing specific information about these types of cases, including the date the case was filed; the case style; the names and addresses of the plaintiff and defendant; the assigned court; the case number; the party against whom judgment was entered; the date the judgment was entered; the amount of the judgment; the date the judgment was satisfied; disposition of the petition; and the case type. The court administrator denied Mr. Jones' request on the grounds that Court Operating Rule 2.04 "requires that public court records be made available only by inquiry of a single case or by accessing any public index."

Subsequently, Mr. Jones filed a petition for mandamus and mandatory injunction against the Circuit Court. He amended his petition on November 19, 2001. In Count I of his amended petition, Mr. Jones alleged that the Circuit Court violated the Sunshine Law by refusing to provide him with the records he requested. In Count II of his amended petition, he alleged that Court Operating Rules 2.02 and 2.04 mandate that the Circuit Court make available to him the records in the format he requested when it is technologically and economically feasible to do so, which he claimed it was. The remedy Mr. Jones sought for both counts was a judgment "in mandamus and/or for a mandatory injunc-

rule further provides that "[a]n order of substitution may be entered at any time, but the omission to enter such an order shall not affect the substitution." Rule 52.13(d). Teresa York, the current Jackson County Court Administrator, is automatically substituted in Ms. Mairs' place.

**2.** All statutory references are to the Revised Statutes of Missouri 2000.

tion" compelling the Circuit Court to give him access to the records containing the information he requested and electronic copies of such records on CD–ROM. Mr. Jones also requested attorney's fees and expenses.

In response, the Circuit Court filed a motion to dismiss Mr. Jones' petition for failure to state a claim upon which relief could be granted. Mr. Jones then filed suggestions in opposition to the motion to dismiss and a motion for summary judgment. The trial court held a hearing on the parties' motions and, on April 9, 2002, entered its judgment dismissing both counts of Mr. Jones' petition for failure to state a claim upon which relief could be granted. Mr. Jones appealed.

This court issued an opinion affirming the trial court's dismissal on April 30, 2004. Mr. Jones subsequently filed a motion for rehearing or transfer. The Attorney General, as amicus curiae, also filed a motion for rehearing or transfer. This court overruled Mr. Jones' motion for rehearing and denied his motion for transfer. On our own motion, we granted rehearing, without additional briefing or argument, to address issues raised in the Attorney General's motion. The April 30, 2004 opinion was withdrawn, and the case was resubmitted on August 31, 2004.

## Standard of Review

■■■ Although Mr. Jones raises six points on appeal, resolution of his points alleging error in the granting of the Circuit Court's motion to dismiss his petition for failure to state a claim upon which relief can be granted disposes of the appeal. A motion to dismiss for failure to state a claim is an attack on the plaintiff's pleadings. *Bosch v. St. Louis Healthcare Network*, 41 S.W.3d 462, 463–64 (Mo. banc 2001). When reviewing the grant of a

motion to dismiss for failure to state a claim, this court considers that:

> A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. It assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom. No attempt is made to weigh any facts alleged as to whether they are credible or persuasive. Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case.

*Id.* at 464 (quoting *Nazeri v. Mo. Valley College*, 860 S.W.2d 303, 306 (Mo. banc 1993) (internal citations omitted)).

## Judgment is Final and Appealable

■■■ Before reaching the dispositive points of Mr. Jones' appeal, this court must determine, *sua sponte*, whether it has jurisdiction to hear the appeal. *Chromalloy Am. Corp. v. Elyria Foundry Co.*, 955 S.W.2d 1, 3 (Mo. banc 1997). The trial court dismissed Mr. Jones' petition without stating whether the dismissal was with or without prejudice. Thus, the dismissal was without prejudice. Rule 67.03 (stating that "[a]ny involuntary dismissal shall be without prejudice unless the court in its order for dismissal shall otherwise specify"). "The general rule is that a dismissal without prejudice is not a final judgment and, therefore, is not appealable." *Chromalloy*, 955 S.W.2d at 3. Nevertheless, "[w]hen the effect of the order is to dismiss the plaintiff's action and not the pleading merely, then the judgment entered is final and appealable." *Mahoney v. Doerhoff Surgical Servs., Inc.*, 807 S.W.2d 503, 506 (Mo. banc 1991). "In such a case, the judgment of dismissal—albeit without prejudice—amounts to an adjudi-

cation on the merits and may be appealed." *Id.*

Here, the trial court ruled that Count I of Mr. Jones' petition failed to state a claim upon which relief could be granted because the Sunshine Law did not apply to the records he wished to obtain from the court. As to Count II, the trial court ruled that it failed to state a claim because "there is no private right of action for the alleged violation of Supreme Court Operating Rules." The trial court did not hold that Mr. Jones failed to plead the required elements of his claims. Instead, the trial court effectively ruled that Mr. Jones had no valid claims because the statute and rules under which he was seeking relief do not apply to the conduct alleged. Therefore, this dismissal is a judgment on the merits, " 'such that a refiling of the petition at that time would be a futile act.' " *State ex rel. Dos Hombres–Independence, Inc. v. Nixon,* 48 S.W.3d 76, 79 (Mo.App. 2001) (quoting *Helms v. Am. States Ins. Co.,* 886 S.W.2d 220, 221 (Mo.App.1994)). Consequently, the judgment is appealable. *Id.*

### No Error in Dismissing Count I

In his first point, Mr. Jones argues that the trial court erred in dismissing Count I of his first amended petition on the grounds that the Sunshine Law did not require the Circuit Court to give him access to the records he sought. Specifically, he claims that the trial court erred in finding that the Circuit Court's record keeping is a judicial rather than an administrative function and, therefore, is not subject to the Sunshine Law. He further argues that he was not asking the Circuit Court to create new records, but simply to retrieve records that were already in existence in a different form. Thus, he argues that he stated a cause of action for mandamus and injunctive relief.

The remedy of mandamus is available only under limited circumstances. *Jones v. Carnahan,* 965 S.W.2d 209, 212 (Mo.App.1998). To have been entitled to mandamus, Mr. Jones must have demonstrated that he had "a clear, unequivocal, specific and positive right to have performed the act demanded, and the remedy will not lie if the right is doubtful." *Id.* at 213. Similarly, because it is a harsh remedy, injunctive relief "is to be used sparingly and only in clear cases." *Coursen v. City of Sarcoxie,* 124 S.W.3d 492, 499 (Mo. App.2004). To have been entitled to injunctive relief, Mr. Jones must have demonstrated that he suffered "the wrongful and injurious invasion of some legal right existing in [him]." *Id.* This requirement is "indispensable." *Id.*

In his amended petition, Mr. Jones alleged that he was entitled to mandamus or injunctive relief compelling the Circuit Court to provide him with the records he requested because the Sunshine Law required the Circuit Court to do so. Mr. Jones alleged that he requested that the Circuit Court, in its "administrative capacity," provide him with records on CD–ROM of landlord petitions and complaints for rent and possession, unlawful detainer, and damages for breach of lease or rental agreements. He requested that the record include the date the case was filed; the case style; the names and addresses of the plaintiff and defendant; the court to which the case was assigned; the number of the case; the party against whom judgment was entered; the judgment date; the judgment amount; the date of judgment satisfaction; other disposition of the petition; and the case type. He further claimed that the court administrator denied his request because Court Operating Rule 2.04 "requires that public court records be made available only by inquiry of a single case or by accessing any public in-

dex." He pled that this denial violated the Sunshine Law.

To determine if these facts entitled Mr. Jones to mandamus or injunctive relief, it will be necessary to interpret provisions of the Sunshine Law. " 'The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning.' " *Wheeler v. Bd. of Police Comm'rs of Kansas City*, 918 S.W.2d 800, 803 (Mo.App.1996) (quoting *Wolff Shoe Co. v. Dir. of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988)). "The provisions of a legislative act are not read in isolation but construed together, and if reasonably possible, the provisions will be harmonized with each other." *Bachtel v. Miller County Nursing Home Dist.*, 110 S.W.3d 799, 801 (Mo. banc 2003).

The Sunshine Law "was enacted to provide the public with access to government records and meetings." *Stewart v. Williams Communications, Inc.*, 85 S.W.3d 29, 32 (Mo.App.2002). Section 610.011.1 states that "[i]t is the public policy of this state that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public unless otherwise provided by law." A "public governmental body" is defined, in pertinent part, as "any legislative, administrative or governmental entity created by the constitution or statutes of this state, by order or ordinance of any political subdivision or district, *judicial entities when operating in an administrative capacity*." Section 610.010(4) (emphasis added). Thus, for the Sunshine Law to apply, the Circuit Court's record keeping must be an administrative function.

The trial court found that record keeping is a judicial, rather than administrative, function. One of Mr. Jones'

allegations of error is that this finding is erroneous. This court need not address whether record keeping is an administrative or judicial function, however. Assuming, without deciding, that the Circuit Court's record keeping is an administrative function and, therefore, the Sunshine Law applies, the trial court correctly dismissed Mr. Jones' request for mandamus in Count I of his petition on another basis.

Section 610.023.2 provides that "[e]ach public governmental body shall make available for inspection and copying by the public of that body's public records." "Public record" is defined as "any record, whether written or electronically stored, retained by or of any public governmental body[.]" Section 610.010(6). In interpreting this definition of public record, the Supreme Court has held that "[t]he ordinary meaning of the word *retain* is 'to hold or continue to hold in possession or use: continue to have, use, recognize, or accept: maintain in one's keeping[.]' " *Hemeyer v. KRCG–TV*, 6 S.W.3d 880, 881 (Mo. banc 1999) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1938 (1976)). Applying the plain meaning of the word "retain," the definition of "public record" includes only those records—either written or electronic—that are already in existence that the public governmental body is "holding" or "maintaining" in its possession.

In his petition, Mr. Jones did not allege that the Circuit Court was holding or maintaining a record that contained only the specific information that he was seeking. Nor did Mr. Jones allege that the Circuit Court refused him access to existing records held or maintained in the Circuit Court's possession. Mr. Jones admits this on appeal. In his brief, Mr. Jones notes that the Circuit Court has "refused to permit access to court records except on a case by case basis by search of indexes

[it has] created." Thus, Mr. Jones acknowledges that the Circuit Court has not refused him access to records already in existence. Rather, Mr. Jones alleges that the Circuit Court violated the Sunshine Law by failing to create a new, customized record containing only the specific information he requested and by failing to provide such record to him.

There is nothing in the definition of "public records," however, that indicates that it includes written or electronic records that *can* be created by the public governmental body, even if the new record could be created from information culled from existing records. The plain language of the Sunshine Law does not require a public governmental body to create a new record upon request, but only to provide access to existing records held or maintained by the public governmental body.

This interpretation of the parameters of the Sunshine Law is consistent with that of other states that have interpreted similar issues involving open record statutes. *See, e.g., Schulten, Ward & Turner, LLP v. Fulton–DeKalb Hosp. Auth.*, 272 Ga. 725, 535 S.E.2d 243, 245 (2000) (open records law "does not require a public agency or officer to create or compile new records by any method, including the development of a computer program or otherwise having a computer technician search the agency's or officer's database according to criteria conceived by the citizen making the request"); *Brent v. Paquette*, 132 N.H. 415, 567 A.2d 976, 983 (1989) (open records "statute does not require public officials to retrieve and compile into a list random information gathered from numerous documents, if a list of this information does not already exist"); *State ex rel. Kerner v. State Teachers Ret. Bd.*, 82 Ohio St.3d 273, 695 N.E.2d 256, 258 (1998) (under open records statute, "a compilation of information must already exist in public records before access to it will be ordered").

The Circuit Court provided Mr. Jones with access to its existing records. Since the plain language of the Sunshine Law does not require a public governmental body to create a new record, but requires only that the public governmental body allow access to existing records, this court holds that, if the Sunshine Law applies, the Circuit Court did not violate it by denying Mr. Jones' request to create a new, customized record from information contained in its existing records. Therefore, Mr. Jones did not establish a right to mandamus in Count I of his amended petition and the trial court did not err in dismissing it. Mr. Jones' first point is denied.

### No Error in Dismissing Count II

■ In his second point, Mr. Jones argues that the trial court erred in dismissing Count II of his amended petition. Specifically, he argues that he sufficiently pled a right to have the Circuit Court comply with Court Operating Rules 2.02 and 2.04, either through mandamus or injunctive relief, because he alleged that it was both economically and technologically feasible for the Circuit Court to provide him accessibility to public case records by the method he requested and in the format he requested.

As this court has stated, to have been entitled to mandamus, Mr. Jones must have demonstrated that he had a clear "right to have performed the act demanded." *Jones*, 965 S.W.2d at 213. To have been entitled to injunctive relief, Mr. Jones had to have clearly demonstrated that he suffered "the wrongful and injurious invasion of some legal right." *Coursen*, 124 S.W.3d at 499.

In Count II of his amended petition, Mr. Jones alleged that he had a right to have

records "consisting of landlord complaints for rent and possession, unlawful detainer and damages for breach of lease or rental agreements" that included the specific information he was requesting because Court Operating Rule 2.04 "provides that [the Circuit Court] shall make available to [him] the information he has requested which is available by accessing electronic public indexes." Mr. Jones argued that, by refusing to provide him with access to case records by the method he requested and in the format he requested, the Circuit Court failed to comply with this rule and the general policy set forth in Court Operating Rule 2.02, because it was "both technologically and economically feasible for [the Circuit Court] to provide [him] with access to the public records by electronic means and CD–ROM format as reasonably requested by [him]."

In support of this claim, he pled that the Circuit Court maintains its records "by an indexing method imputed on a relational database program known as Oracle." He claimed that "[t]he Oracle program is structured and designed to store data in a number of tables that are created." He further alleged that the "structural query language is a standard relational database language that has the power to query of these databases (multiple tables of compilations at one time) from which the information requested by [him] may be retrieved and compiled on a CD–ROM format." Thus, he stated that "[t]he technology is available to provide the records requested by [him] without imposing any undue or unreasonable burden upon [the Circuit Court]."

 To determine whether these facts showed that Mr. Jones was entitled to mandamus or injunctive relief, this court must interpret Court Operating Rules 2.02 and 2.04. "Courts interpret Supreme Court Rules by applying principles similar to those used for state statutes." *State ex. rel. Vee–Jay Contracting Co. v. Neill,* 89 S.W.3d 470, 471–72 (Mo. banc 2002). "[I]n interpreting a rule, [this court is] to ascertain the intent of the Court, giving the language used its plain and ordinary meaning." *Dynamic Computer Solutions, Inc. v. Midwest Mktg. Ins. Agency, L.L.C.,* 91 S.W.3d 708, 713 (Mo.App.2002). "If the intent of a rule is clear and unambiguous, after giving the language used its plain and ordinary meaning, [this court is] to give effect to that intent and [is] not to engage in any construction of the rule." *Id.*

Court Operating Rule 2.02 states that "[r]ecords of all courts are presumed to be open to any member of the public for purposes of inspection or copying during regular business hours of the court having custody of the records." The term "record," as it is used in Court Operating Rule 2, is defined as "information produced or available to the court regardless of physical form or storage medium used." Court Operating Rule 2.03(g). Mr. Jones was seeking access to case records, which are defined as "all records relating to a specific case or controversy." Court Operating Rule 2.03(b). Court Operating Rule 2.02 further provides that "[r]ecords, information and services shall be provided at a time and in a manner that does not interfere with the regular business of the courts." Finally, Court Operating Rule 2.02 states that it "imposes no obligation upon the judiciary to create a data element, make a data element available electronically, or produce nonstandard reports when it is not technologically or economically feasible to do so."

It is this last statement in Court Operating Rule 2.02 that Mr. Jones contended required the Circuit Court to grant his request. As in Count I, Mr. Jones did not allege in Count II that the Circuit Court

refused him access to existing case records which contain the information he was seeking. Rather, Mr. Jones alleged in Count II that the Circuit Court refused to make the case records available to him by the method and in the format he requested, and he argued such refusal violated Court Operating Rule 2.02 because it was technologically and economically feasible for the Circuit Court to have done so. This court disagrees with Mr. Jones' interpretation of Court Operating Rule 2.02. While it is true that Court Operating Rule 2.02 states that the judiciary does not have "to create a data element, make a data element available electronically, or produce non-standard reports when it is not technologically or economically feasible to do so," the plain language of Court Operating Rule 2.02 does not provide that the judiciary must create a data element, make a data element available electronically, or produce non-standard reports whenever it *is* technologically or economically feasible to do so.

■ Moreover, Mr. Jones' interpretation of Court Operating Rule 2.02 as requiring the judiciary to make public case records available by a requested method or in a requested format whenever it is technologically and economically feasible to do so is inconsistent with the plain language of Court Operating Rule 2.04. "Statutory provisions relating to the same subject matter are considered *in pari materia* and are to be construed together," so as to be read "consistently and harmoniously." *Baldwin v. Dir. of Revenue*, 38 S.W.3d 401, 405 (Mo. banc 2001). Court Operating Rule 2.04 clearly states that public case records from which a person can be identified, which are what Mr. Jones is seeking, are to be available "only by inquiry of a single case or by accessing any public indexes," and these indexes are available by case number, file date, party

name, and calendar date. Nothing in the plain and ordinary language of Court Operating Rule 2.04 requires or permits the judiciary to make its public case records from which a person can be identified available through a public index by case subject matter, which is what Mr. Jones is requesting.

■ Thus, even if Court Operating Rule 2.02 could be read to require the judiciary to make public case records available by a requested method or in a requested format whenever it is technologically and economically feasible to do so, Court Operating Rule 2.04 would still control the electronic availability of public case records from which a person can be identified. "[T]he rules of statutory construction are clear that in situations where the same subject matter is addressed in general terms in one statute and in specific terms in another, and there is a 'necessary repugnancy' between statutes, the more specific statute controls over the more general." *Robinson v. Health Midwest Dev. Group*, 58 S.W.3d 519, 522 (Mo. banc 2001). Court Operating Rule 2.02 deals generally with access to all public records of the judiciary, while Court Operating Rule 2.04 specifically concerns access to public case records from which a person can be identified.

This court finds that the plain and ordinary language of Court Operating Rules 2.02 and 2.04 did not require the Circuit Court to make public case records from which a person can be identified available by the method Mr. Jones requested or in the format he requested. Because Court Operating Rules 2.02 and 2.04 did not require the Circuit Court to perform these functions, Mr. Jones did not show an entitlement to mandamus or injunctive relief in Count II of his amended petition. The trial court did not err in dismissing it. Mr. Jones' second point is denied.

This court's determination that the trial court did not err in dismissing both counts of Mr. Jones' amended petition renders his four other points on appeal moot, so this court will not address them. "A question presented to the court for decision which will have no practical effect upon any then existing controversy is moot." *In Interest of N.D.,* 857 S.W.2d 835, 843 (Mo.App.1993).

The judgment of the trial court is affirmed.

All concur.